**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | | |
|---|---|---|
| SUSAN THOMAS, | ) | |
| | ) | |
| Plaintiff, | ) | No. 23 CV 3736 |
| | ) | |
| v. | ) | Hon. Mary M. Rowland |
| | ) | Magistrate Judge Beth W. Jantz |
| THE GODDESS AND THE BAKER, LLC; and | ) | |
| GODDESS AND THE BAKER MADISON, LLC | ) | |
| | ) | JURY DEMANDED |
| Defendants. | ) | |

**DEFENDANTS' MOTION TO**
**DISMISS PLAINTIFF'S FIRST AMENDED COMPLAINT**

NOW COME Defendants, THE GODDESS AND THE BAKER, LLC, and GODDESS AND THE BAKER MADISON, LLC (collectively, "Defendants") by and through their attorneys, Steven B. Borkan, Emily E. Schnidt, and Hilary L. Jabs of BORKAN & SCAHILL, LTD., and pursuant to Fed. R. Civ. P. 12(b)(6), moves this Court for an order dismissing Plaintiff's First Amended Complaint. In support thereof, Defendants state as follows:

**INTRODUCTION**

This case arises from Plaintiff inadvertently ingesting a sliver of carrot in a salad and thereafter experiencing an allergic reaction, requiring medication on the day she ate the salad. Plaintiff believes Defendants must be liable for her allergic reaction, notwithstanding her failure to provide them with notice of her carrot allergy. She also alleges Defendants must be liable because, unbeknownst to them, she was a disabled person, and by serving her a salad that contained a sliver of carrot, Defendants denied her equal access to Defendants' restaurant, a place of public accommodation. However, Plaintiff's First Amended Complaint fails to recognize that a food allergy to only certain items does not constitute a disability under the Americans with Disabilities Act (hereinafter, "ADA") or the Illinois Human Rights Act (hereinafter, "IHRA"). Plaintiff also claims Defendants engaged in

1

fraudulent and deceptive business practices by failing to disclose that the ingredients in the salad she ordered may contain a sliver of carrot. Plaintiff's allegations under the Illinois Consumer Fraud and Deceptive Business Practices Act (hereinafter, "ICFA"), that a salad may inadvertently include a sliver of an unlisted ingredient, do not amount of a fraudulent or deceptive business practice that the Illinois courts contemplate. Plaintiff's negligence claim must be dismissed because Plaintiff fails to plead facts supporting an alleged duty owed to her. Lastly, Plaintiff's strict liability claim must be dismissed because Plaintiff fails to state a cognizable claim. Accordingly, Plaintiff's Complaint must be dismissed for failing to state a cognizable claim under federal or state law.

## FACTUAL ALLEGATIONS

On September 28, 2022, Plaintiff purchased a Southwest Salad from Defendants' restaurant, Goddess and the Baker (hereinafter, "Goddess"). Dckt. No. 14 at ¶ 9. Plaintiff previously ordered this salad, knowing it did not contain carrots. *Id.* at ¶ 12. While consuming the salad, Plaintiff allegedly noticed a sliver of carrot and thereafter began to experience an allergic reaction. *Id.* at ¶¶ 13-14. Plaintiff took two Benadryl pills, a shot of her epinephrine pen, and sought medical treatment at Northwestern Hospital. *Id.* at ¶¶ 15-17. Because of this reaction, Plaintiff seeks liability under the ADA (Count I), IHRA (Count II), ICFA (Count III), state law for negligence (Count IV), and state law for Strict Product Liability (Count V).[1]

Plaintiff filed a Charge of Discrimination with the Illinois Department of Human Rights ("IDHR") on June 25, 2023, alleging she had a life-long allergy to carrots, which rendered her disabled. *Exhibit 1*, Charge of Discrimination at p. 1. Plaintiff alleged she consumed a carrot, causing her to suffer in violation of the ADA. *Id.* Plaintiff did not claim she was disabled because of any other food allergy and therefore has not perfected a Charge with the IDHR on any other basis besides her claimed carrot allergy. *Flores v. Bd. of Trustees of Cmty. Coll. Dist. No. 508*, 103 F. Supp. 3d 943, 948 (N.D. Ill.

---

[1] Plaintiff's First Amended Complaint incorrectly lists the fifth Count as "Count IV".

2015)(recognizing a court may consider a charge of discrimination to determine appropriate breadth of claims when ruling on a motion to dismiss, finding a plaintiff cannot bring claims in federal court that were not included in the administrative charge). Now, Plaintiff alleges in her First Amended Complaint that she suffers from several other food allergies, albeit none that Defendant served her on September 28, 2022. Dckt. No. 14 at ¶¶ 1, 10, 13.

## LEGAL STANDARD

"A motion under Federal Rule of Civil Procedure 12(b)(6) tests whether the complaint states a claim on which relief may be granted." *Richards v. Mitcheff*, 696 F.3d 635, 637 (7th Cir. 2012). Under Rule 8(a)(2), a complaint must include "a short plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P 8(a)(2). It must "'give the defendant fair notice of what…the claim is and the grounds upon which it rests.'" *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1975)). A motion to dismiss pursuant to Rule 12(b)(6) should be granted if the complaint fails to state a claim upon which relief can be granted. *Cocoran v. Chi. Park Dist.*, 875 F. 2d 609, 611 (7th Cir. 1989). Although when considering such motions the Court accepts as true all of the well-pleaded facts alleged by the plaintiff and all reasonable inferences that can be drawn therefrom, the Court is not obligated to accept a complaint that merely raises the possibility of relief. *EEOC v. Concentra Health Servs, Inc.*, 496 F. 3d 773, 776 (7th Cir. 2007).

## ARGUMENT

**I. Counts I and II Fail as Plaintiff Cannot Establish She Is A Disabled Person Pursuant to the ADA and IHRA or That Defendants Discriminated Against Her on the Basis of Her Disability.**

Dismissal of Counts I and II is proper as Plaintiff failed to allege facts sufficient to establish her contention that she is "disabled" under the ADA and IHRA and therefore a member of a protected class. Plaintiff's Counts I and II are based on allegations that Defendants denied her equal access to their restaurant, a place of public accommodation under Title III of the ADA and 775 ILCS

3

5/5-101, *et seq*. Dckt. No. 14 at ¶¶ 21-39. Title III of the ADA prescribes, generally, "No individual shall be discriminated against on the basis of disability in the full and equal enjoyment of goods, services, facilities, privileges, advantages, or accommodations of any place of public accommodation by any person who owns, leases (or leases to), or operates a place of public accommodation." 42 U.S.C. § 12182(a). The ADA is violated when a public accommodation "fails to take such steps as may be necessary to ensure that no individual with a disability is excluded, denied services, segregated, or otherwise treated differently than other individuals because of the absence of auxiliary aids or services…" 42 U.S.C. § 12182(b)(2)(iii). The IHRA contains similar language regarding public accommodations and violations of the Act. 775 ILCS 5/5-102 (stating generally, it is a civil rights violation to deny or refuse full and equal enjoyment of the goods of any public place of accommodation).

A prima facia case under Title III of the ADA requires three elements: "(1) the plaintiff was disabled within the meaning of the ADA; (2) the defendant owned, leased, or operated a place of public accommodation; and (3) the plaintiff was discriminated against on the basis of her disability." 42 U.S.C. § 12188; *Stewart v. Parkview Hospital, Inc.*, 2017 WL 4764349, at *2 (N.D. Ind. Oct. 20, 2017). Similarly, under the IHRA, to establish a prima facie case for public accommodation discrimination, plaintiff must plead she, "(1) is a member of a protected class; (2) attempted to exercise her right to full benefits and enjoyment of a place of public accommodation; (3) was denied those benefits and enjoyment; and (4) was treated less favorably than similarly situated persons outside her protected class." *Williams v. Human Rights Commission*, 2022 WL 1265480, at *5 (1st Dist. Apr. 28, 2022). As argued herein, Plaintiff's allergy does not amount to a disability and therefore she cannot seek liability under the ADA or IHRA. Additionally, even if Plaintiff's allergy were to constitute a disability, the facts alleged in her First Amended Complaint do not establish that she would have been granted the

full use and enjoyment of Defendants' restaurant but for her disability. Accordingly, Plaintiff's Counts I and II must be dismissed.

### A. Plaintiff's Allergy Does Not Qualify Her as a Disabled Person.

Most detrimental to Plaintiff's claims under the ADA and IHRA is that she is not "disabled" within the meaning of the law. Courts in Illinois and throughout the United States have routinely found that allergies do not qualify as a disability, even after the ADA's 2008 amendments broadening the definition of "disabled." *See infra, Land v. Baptist Med. Ctr.,* 164 F.3d 423, 424–25 (8th Cir. 1999)(peanut allergy is not a disability); *McLorn v. Cmty. Health Svcs.*, 456 F.Supp. 2d 991 (2006)(latex allergy was not a disability); *see also Shirley v. Collier Cty. Sheriff's Office*, 2013 WL 2477261, at *2 (M.D. Fl. June 10, 2013)(allergy to egg is not a disability); *Griffin v. United Parcel Service, Inc.*, 2010 WL 3081305, at *3 (E.D. La. Aug. 5, 2010)(lactose intolerance, food allergies, and other eating-related impairments are not disabilities); *Slade v. Hershey Co.*, 2011 WL 3159164, at *5 (M.D. Penn. July 26, 2011)(allergy does not qualify as a disability where avoiding exposure to nuts and keeping medication mitigates symptoms of allergy); *Phillips v. P.F. Chang's China Bistro, Inc.*, 2015 WL 469049, at *4 (N.D. Cal. Aug. 6, 2015)(avoiding ingestion of gluten because of diagnosed celiac disease does not amount to impacting a major life activity and does not qualify as a disability); *Brady v. The Evangelical Lutheran Good Sam. Society*, 2023 WL 6393882, at *5 (E.D. Tex. Oct. 2, 2023)(citing federal cases dismissing discrimination claims where plaintiff fails to establish allergies substantially limit daily life activities).

Under the ADA, a "disability" includes a physical or mental impairment that substantially limits one or more major life activity. 42 U.S.C.A. § 12102(1). Similarly, under the IHRA, a "disability" is, generally, any physical or mental characteristic of a person, which may be the result from disease, injury, congenital condition of birth, or functional disorder. 775 ILCS 5/1-103(I), *et seq.* To determine if an impairment substantially limits a major life activity, the Court considers "(i) The nature and severity of the impairment; (ii) The duration or expected duration of the impairment; and (iii) The

5

permanent or long term impact, or the expected permanent or long term impact of or resulting from the impairment." *McLorn*, 456 F. Supp. 2d at 996. Importantly, in considering whether a condition qualifies as a "disability," courts look to whether the condition itself is disabling as opposed to the infrequent symptoms that can be caused by the condition. "A permanent condition is not disabling simply because infrequent flare-ups may produce severe symptoms; the question is whether the condition, not the occasional flare-up, is disabling." *See Moore v. J.B. Hunt Transp., Inc.*, 221 F.3d 944, 952 (7th Cir. 2000)(finding infrequent flareups, which caused plaintiff to be completely debilitated, did not constitute a disability); *see also Ellis v. Paulson*, 2010 WL 2541048, at *25 (E.D. Wisc. June 21, 2010)(finding allergic reaction to allergens, even if severe when triggered, do not amount to a disability: "Ultimately, the question is whether [the plaintiff's] condition, not the occasional flare-up, is disabling.").

In *McLorn*, the plaintiff discovered a latex allergy while working for his employer and wearing synthetic latex gloves. *McLorn*, 456 F.Supp.2d at 994. The plaintiff alleged his employer terminated his employment when he refused to wear the synthetic latex gloves, arguing his allergy to the gloves constituted a disability requiring a reasonable accommodation. *Id.* at 995. The court examined whether the plaintiff had a qualifying disability under the ADA and noted his allergy was somewhat severe but that he only experienced mere periodic episodes of allergic reactions when he came into direct contact with synthetic latex. *Id.* at 996. The Court found no evidence that McLorn's contact with synthetic latex was so common in his ordinary life that his period flare-ups after direct contact substantially impaired his major life activities of sleeping and breathing. *Id.* at 997. Accordingly, the plaintiff did not suffer a substantial impairment of major life activities because of his allergy, and the court found he was not disabled within the meaning of the ADA. *Id.* at 997.

Other circuits have considered similar issues and also held that if a person has an allergic reaction to a particular food item that can otherwise be avoided, then that person is not disabled

because it does not substantially limit a major life activity. In *Land*, 164 F.3d at 424-25, the mother of a child with a peanut allergy sued a daycare center under the ADA, and the Eighth Circuit granted summary judgment for the daycare, holding the child's allergy was not a disability. *Id.* The court noted the child's peanut allergy was not substantially limiting because the child could eat other foods that did not contain peanuts or their derivatives. *Id.* She did not experience an allergic reaction when consuming other types of food nor was her physical ability to eat in any way restricted. *Id.* at 425. While her breathing was limited when she ate foods containing peanuts, her allergy did not cause breathing issues at any other time and therefore did not substantially impact a major life activity. *Id.* Defendants recognize whether an allergy is avoidable is not the sole consideration that courts now use in a disability evaluation, but it is certainly evidence that the allergy does not substantially limit a major life activity when one can eat and breathe when not eating that specific food item nor is a person regularly risking eating that food item when consuming food. *See Alphonis v. Century Regional Detention Facility*, 2017 WL 11505981, at *11-12 (C.D. Cal. Sept. 11, 2017)(explaining experiencing limited allergic reactions to specific food items is not substantially limiting a major life activity; by contrast, peanut allergies *might* be substantially limiting because of the risk of exposure to peanuts everyday: "Peanut allergies might present a unique situation because so many seemingly innocent foods contain trace amounts of peanuts that could cause severe allergic reactions.").

Identical to this instant matter, Plaintiff's carrot allergy does not substantially impair Plaintiff's eating or breathing when consuming other foods and therefore does not significantly impact a major life activity. Plaintiff does not have an allergy to many other food items, including all of the listed ingredients in Goddess' Southwest Salad. Dckt. No. 14 at ¶ 10 (listing romaine lettuce, black beans, diced tomatoes, corn, red peppers, chihuahua cheese, tortilla strips, and chipotle buttermilk dressing as items Plaintiff intended to order and presumably could consume). Accordingly, if she simply avoids eating carrots, then she does not have a significant impairment of a major life activity, constituting a

disability. Moreover, Plaintiff has not pled how this allergy is substantially limiting in any major life activity. While Plaintiff may suffer an allergic reaction if she consumes an allergen, that reaction is nothing more than an "occasional flareup" to a temporary condition. Thus, Plaintiff is not disabled under the ADA and IHRA and she cannot state a claim under Counts I and II.

**B. Plaintiff Cannot Prove That "But For" Plaintiff's Alleged Disability She Would Have Access to Defendants' Restaurant.**

The ADA and IHRA prohibit discrimination *on the basis of* an individual's disability, and not simply the inadvertent impact on an individual's alleged disability. *See* 42 U.S.C. § 12182(a); 775 ILCS 5/5-102. The Seventh Circuit has recognized the "on the basis" standard requires proof that "but for" the plaintiff's disability, she would have been able to access the benefits of a public accommodation. *A.H. by Holzmueller v. Illinois High School Association*, 881 F.3d 587, 593 (7th Cir. 2018) ("Under Title III, the 'on the basis' standard requires a plaintiff to prove that, 'but for' the plaintiff's disability, he would have been able to access the services or benefits desired.") Here, Plaintiff's claims cannot give rise to liability under Title III of the ADA or the IHRA because she will not be able to establish that but for her food allergy, she could enjoy the services at Defendants' restaurant. Even with her alleged disability, she can still order salads, sandwiches, baked goods, and other menu items at Goddess in the same manner as any other restaurant patron. Plaintiff is not precluded from requesting certain ingredients not be included or used in the preparation of her meal and she is at no greater risk of those items appearing in the meal than any other restaurant patron making a similar request, regardless of any allergy. By comparison, if a vegetarian orders a salad that contains meat, they are in the same position as Plaintiff – they both received a food item that they cannot eat, having nothing to do with their abilities.

Moreover, if Plaintiff chooses not to order from Defendants' restaurant because of the risk of cross-contamination with her food allergen, then she is no worse off than any person who chooses not to order from their restaurant because of dietary preferences or restrictions. In other words,

Defendants serving food items that Plaintiff is allergic to does not impact her any differently than a person who does not have her allergy but also does not or cannot eat Defendants' food. *See Magee v. McDonald's USA, LLC*, 2021 WL 4552411 at *4 (N.D. Ill. Oct. 5, 2021)(finding policy that prohibited sales of food to all pedestrians at drive through window impacted all patrons and not just disabled person: "McDonald's USA's policy to deny pedestrians service in the drive-through affects all patrons of the restaurant – regardless of disability. Magee's disability is not what prevents him from purchasing McDonald's food during the late-night hours; it is instead his status as a pedestrian that limits his access."); *A.H. by Holzmueller*, 881 F.3d at 593-94 (finding no cognizable Title III claim where equally applied standards impacted disabled and able-bodied individuals alike). In reality, Plaintiff and any other patron run the risk of possible cross contamination, or a food item being used to prepare their meal, regardless of their abilities. Plaintiff cannot claim that "but for" her disability, she would have had access to Defendants' restaurant or a carrot would not have appeared in her salad.

Also problematic is Plaintiff's failure to plead Defendants were aware of Plaintiff's disability, assuming, *arguendo*, that she was disabled. As discussed more fully herein, in Section III, Plaintiff did not plead Defendants were on notice of Plaintiff's disability or that Plaintiff provided Defendants with notice of her allergy upon placing her order. The ADA, and similarly the IHRA, specifically require proof that the discrimination occurred *on the basis of a disability*, which can be proven by showing the defendant acted intentionally on the basis of the disability, the defendant refused to provide a reasonable modification, or the defendant's rule disproportionately impacts disabled persons. *A.H. by Holzmueller*, 881 F.3d at 592-93 ("Thus, we have recognized that disability discrimination under the Rehabilitation Act and the ADA can be established in three different ways: "(1) the defendant intentionally acted on the basis of the disability, (2) the defendant refused to provide a reasonable modification, or (3) the defendant's rule disproportionally impacts disabled people.") Plaintiff has not pled Defendants were on notice of Plaintiff's disability, and therefore cannot prove that they acted

intentionally or refused to provide her a reasonable accommodation because of her disability. Moreover, as argued, Defendants' cross-contamination in preparing a salad does not disproportionately impact disabled persons any more than it impacts a person with a dietary preference, such as a vegetarian, who prefers not to have an ingredient in their salad. Accordingly, Plaintiff's ADA and IHRA claims in Counts I and II must be dismissed.

## II. Dismissal of Count III Is Warranted as Plaintiff Fails to Plead A Deceptive Business Practice.

Dismissal of Count III is proper as Plaintiff's allegations do not amount to Defendants engaging in unfair or deceptive business practices. Plaintiff's Count III seeks remedy under the ICFA, asserting Defendants' deception, false promise, and/or misrepresentations in consuming the food served to her caused her damage. "To adequately plead a private cause of action under the ICFA, a plaintiff must allege: (1) an unfair or deceptive act or practice by the defendant; (2) the defendant's intent that the plaintiff rely on the deception; (3) that the deception occurred in the course of conduct involving trade or commerce; (4) actual damage to the plaintiff; and (5) that such damages were proximately caused by the defendant's deception." *Thrasher-Lyon v. Illinois Farmers Ins. Co.,* 861 F. Supp. 2d 898, 908-09 (N.D. Ill. 2012). Deceptive conduct and unfair conduct require different pleading standards. If a claim alleges deceptive conduct, then "the plaintiff must plead with particularity the circumstances constituting fraud. Specifically, the complaint must identify the who, what, when, where, and how of the alleged fraud." *Vazant v. Hill's Pet Nutrition, Inc.*, 934 F.3d 730, 738 (7th Cir. 2019); *Camasta v. Jos. A. Bank Clothiers, Inc.*, 761 F.3d 732, 737 (7th Cir. 2014)("While Rule 9(b) does not require a plaintiff to plead facts that if true would show that the defendant's alleged misrepresentations were indeed false, it does require the plaintiff to state the identity of the person making the misrepresentation, the time, place, and content of the misrepresentation, and the method by which the misrepresentation was communicated to the plaintiff.")

Here, Plaintiff alleges Defendants deceived Plaintiff by stating, orally and on its menu, that the Southwest Salad only contains those ingredients listed in its menu and that it does not contain carrots and failing to warn of the potential for cross-contamination of unlisted ingredients.[2] Dckt. No. 14 at ¶¶ 46-48. Plaintiff's pleadings do not state with particularity the "who, what, when, where, and how" of how the deceptive practice occurred. Specifically, Plaintiff does not state who made this fraudulent representation, when, where, or how the deceptive practice occurred. Instead, Plaintiff pled she ordered a salad, knowing the listed ingredients, and later noticed a sliver of carrot in her salad. *Id.* at ¶¶ 9-13. These pleadings as they stand do not amount to a deceptive practice or fraud.

Additionally, Plaintiff's claims do not amount to a deceptive practice when considering the reasonable consumer, which is the applicable standard of proof to Plaintiff's claim under Count III. "A practice is deceptive if it creates a likelihood of deception or has the capacity to deceive." *Geske v. PNY Technologies, Inc.*, 503 F.Supp.3d 687, 705 (N.D. Ill. 2020). To determine if the practice has a likelihood of deception, the court should consider the "reasonable consumer," which requires "a probability that a significant portion of the general consuming public acting reasonably in the circumstances, could be misled." *Id.*

Here, the reasonable consumer knows ordering food from a restaurant always carries with it the risk that it could be prepared in a manner the consumer does not desire, it could contain an ingredient the consumer does not want, and it could be cross contaminated with other food items that are not listed on the particular item the consumer orders. Indeed, that is a frequent occurrence at most restaurants. The reasonable consumer, with an allergy, would certainly consider all of the food items the restaurant serves when deciding whether to order or if there is a risk of any contamination with that allergen when the kitchen prepares the food. Accordingly, the reasonable consumer appreciates

---

[2] To the extent Plaintiff argues his Count III is based on unfair practices, it is clear including a sliver of carrot in a salad does not offend public policy, is immoral, unethical, oppressive, or causes substantial injury to consumers.

the risk of ordering food and takes the necessary precautions should he or she require or desire certain food items not to be present in their food. Indeed, Plaintiff discovered the sliver of carrot when she looked at her salad, indicating the reasonable consumer cannot be deceived when ordering food at Defendants' restaurant. Plaintiff has not pled a prima facie case under the ICFA and based on her pleadings, cannot support a claim for deceptive business practices. Accordingly, Count III cannot survive this Motion to Dismiss.

### III. Dismissal of Count IV Is Warranted as Plaintiff Failed to Provide Notice and Fails to Allege Failure to Comply with Statute or Code Proximately Caused Her Injuries.

Dismissal of Count IV is proper as Plaintiff did not provide Defendants notice of her severe allergy condition to provide them with the opportunity to take further precautions. It is well-recognized that to state a claim for negligence, a plaintiff must plead the defendant owed her a duty, the defendant breached that duty, and the breach proximately caused the plaintiff's injuries. *Cosgrove v. Commonwealth Edison Co.*, 734 N.E.2d 155, 158-59 (1st Dist. 2000). Here, even with her amended pleading, Plaintiff never alleged she advised Defendants of her allergy, creating a duty of care. "In order that an act or omission may be regarded as negligent, the defendant must have knowledge or ought to have known from the circumstances, that the allegedly negligent act or omission endangered another." *Adams v. N. Ill. Gas Co.*, 809 N.E.2d 1248, 1259 (Ill. 2004). Without any pleading that Defendants had knowledge of Plaintiff's allergy, Defendants cannot be liable for negligence. For that reason alone, Count IV must be dismissed.

Count IV must also be dismissed because Plaintiff alleges Defendants negligently failed to comply with the Food Handling Regulation Enforcement Act (hereinafter, "FHREA"), when the statute does not create a private cause of action. Dckt. No. 14 at ¶¶ 18, 20, 56, 58-61; *see* 410 ILCS 625/1, *et seq*. Moreover, Plaintiff fails to allege how Defendants' alleged failure to comply with the statute proximately caused her injuries. For instance, Plaintiff alleges Defendants: (i) failed to ensure Goddess was under the operational supervision of a certified food service sanitation manager; (ii)

failed to ensure all food handlers received and/or obtained accredited training within 30 days after employment and every three years thereafter; (iii) failed to ensure all certified food service sanitation managers received or obtained qualified training in basic allergen awareness; and (iv) failed to display a notice indicating to consumers that any information regarding food allergies must be communicated to an employee. *See* Dkt. 1-1 at ¶ 50. However, Plaintiff does not include any allegations in her Amended Complaint that these alleged failures created her harm. Similarly, Plaintiff does not allege that these failures caused there to be a sliver of carrot in her salad. While Plaintiff asserts the failure to comply with the FHREA is *prima facie* evidence of negligence, the statute does not create a duty on Defendants to Plaintiff and Plaintiff has not pled any facts to create such a duty. Thus, Plaintiff failed to meet her burden of pleading Defendants' negligence based on the FHREA.

Plaintiff also alleges Defendants negligently failed to comply with the Food Code Rules when the municipal code also does not create a private cause of action, nor does it apply to the facts at issue. *See* Dckt. No. 14 at ¶¶ 18, 20, 57-60. Notably, Plaintiff's cited Section 2-112-100(b) speaks to the power of the Commissioner for the City of Chicago in creating and executing grants. *Id.*[3] ("The Commissioner shall have the power to…"). Section 2-112-160(a)(7), upon which Plaintiff also relies, does not contain a section a or subsection 7 as Plaintiff's cites, and Section 2-112-160 relates to the Commissioner's authority to clean or disinfect buildings to prevent the spread of communicable diseases. *Id.*[4] ("The Department shall have power to cause any building…to be cleaned, disinfected, or closed to visitors and prevent persons from entering thereto while any such buildings or premises contains any person having communicable disease.") Nevertheless, Plaintiff alleges Defendants: (i) failed to ensure that the employees were properly trained in food safety, including food allergy

---

[3] Chicago Municipal Code 2-112-100(b) can be found at:
https://codelibrary.amlegal.com/codes/chicago/latest/chicago_il/0-0-0-2602706#JD_2-112-100
[4] Chicago Municipal Code 2-112-160 can be found at:
https://codelibrary.amlegal.com/codes/chicago/latest/chicago_il/0-0-0-2602771#JD_2-112-160

awareness; and (ii) failed to ensure that all certified food service sanitation managers received or obtained qualified training in basic allergen awareness, in violation of the Food Code. Just as with Illinois statute, the Chicago municipal code does not create a duty between Plaintiff and Defendants. Moreover, Plaintiff's case does not involve the City of Chicago Commissioner and it does not involve the closure or disinfecting of a building. Accordingly, Plaintiff's Count IV must be dismissed.

### IV. Dismissal of Plaintiff's Second Count IV, Strict Liability, Is Warranted as Inclusion of a Sliver of Carrot In a Salad Did Not Make The Product Unreasonably Dangerous.

Plaintiff's newly-added claim, in his second Count IV, seeks liability based on "strict liability." Plaintiff alleges Defendants were a producer and seller of food products, owed a duty to comply with the FHREA and municipal code, knew or should have known the Southwest Salad contained carrots or that there was a potential for cross-contamination of allergens, and failed to warn Plaintiff of the allergens, creating an unreasonably dangerous and unsafe foreseeable product. *Dckt. No.* 14 at ¶¶ 65-76. Plaintiff alleges she suffered injury from consuming the Southwest Salad. *Id.* at ¶ 76.

A strict liability claim differs from a negligence claim in that the focus is on the condition of the product itself. *Salerno v. Innovative Surveillance Tech., Inc.*, 932 N.E.2d 101, 108 (1st Dist. 2010) ("In a strict liability claim, the focus of the inquiry is on the condition of the product itself. A negligence claim accounts for a defendant's fault as well as the product's condition.") A strict liability claim can be premised on a manufacturing defect, a design defect, or a failure to warn theory of liability. *Id.* Here, Plaintiff seemingly premises her strict liability claim on a failure to warn theory. *Dckt. No.* 14 at ¶ 74 ("Goddess Restaurant's failure to warn Ms. Thomas that its "Southwest Salad" contained allergens, or at the very least contained the potential for cross-contamination from allergens, caused the product to be unreasonably dangerous to a consumer with a food allergy.")

Under Illinois, a strict liability claim proceeding under a failure to warn theory looks to whether the manufacturer failed to disclose an unreasonably dangerous condition or failed to instruct on the proper use of the product which the average consumer would not be aware. *Salerno*, 932 N.E.2d at

109-110. There is no liability where the product is not defectively designed and where the possibility of injury is obvious to the user. *Id.* at 110.

It is obvious that Defendants' salad is not unreasonably dangerous. Moreover, the presence of a sliver of carrot is not unreasonably dangerous, even if unintentionally added as an ingredient. Moreover, the average consumer would be aware that purchasing food from a restaurant serving several other food items, including carrots in another menu item, may result in the risk of cross-contamination and the presence of undesired ingredients. In other words, the reasonable consumer appreciates the risk of ordering food and takes the necessary precautions should he or she require or desire certain food items not to be present in their food. The average consumer would not expect, whether with or without notice, that a restaurant can guarantee all food will be free from any potential allergens, especially when those allergens are served from the same kitchen. Defendants were not obligated to warn of the potential for cross-contamination of its menu items. Plaintiff cannot state a claim for strict liability in this matter and Plaintiff's second Count IV must be dismissed.

Alternatively, in the event Plaintiff's second Count IV survives, Plaintiff should be ordered to plead a more definite statement in accordance with Fed. R. Civ. Pro. 12(e) given the vague and ambiguous pleadings.

WHEREFORE, Defendants, THE GODDESS AND THE BAKER, LLC and GODDESS AND THE BAKER MADISON, LLC, pray that this Honorable Court grant Defendants' Motion to Dismiss Plaintiff's Complaint and for all other relief deemed equitable and just.

Respectfully submitted,

BORKAN & SCAHILL, LTD.

s/Emily E. Schnidt
Emily E. Schnidt

BORKAN & SCAHILL, LTD.
20 South Clark Street, Suite 1700
Chicago, Illinois 60603
(312) 580-1030

15